Judge Haywood
Before we proceed to the immediate investigation of the first question — Whether, in the case of a sealed instrument, unattested by any subscribing witness, the hand-writing of the party may be admitted in evidence. 5 it may be proper to take a view of the origin of deeds, in our law ; and of the Various changes and alteiations the law has undergone, with respect to that species of instruments, in order to be accommodated to the different circumstances, which different periods of time have produced. This may have a sttonger tendency to place the present question in a true light, than perhaps any method of treating the subject iuat could be devised.
Let us consider, therefore, 1st,'the origin of reducing contracts to writing ; — 2ti!y, the origin of sealing, with the uses that have been made of it at different periods s— 3diy, (he origin of delivery.
We will then consider the only circumstance essential to the. constitution of a deed at this day : and lastly, from all these premises, we will draw conclusions applicable, to the point now in controversy.
' I. All writers agree that the northern nations of Europe, who spread themselves over the southern and western parts of it, were an illiterate people, who despised *224 aj!j arts but those of war. Tin* Saxons who founded 'the heptarchy in England, and afterwards the English ino-narohy, were part of those people — they had, in general, - no knowledge'of letters — their laws and customs, their legal ceremonies, were preserved and transmitted to others and to posterity by tradition only. To keep up a military spirit, and to have a band of warriors always ready at command, it was the universal practice of the conquering leaders of these nations to divide the conquered country into allotments, which were parcelled out to their followers: — first, at the will of the lord or leaderj next, for the better encouragement of agriculture, for life; and, last of all, for ever orón fee. About the time when it began to be usual to make these grants for life, the Christian religion, under the auspices of the Papal see, was propagated in England by St. Augustine and others, and was soon adopted and received as the national religion, Its priests were men of some learning — they hero, as in all other places where they have been received, began to grasp at temporal advantages — they inculcated upon the minds of the people, that it was an act of the most meritorious piety to provide for the maintenance of the ministers of God. This doctrine had its effect, and donations of allotments of land began to be made to the Church, also for life : but this life was supposed to be perpetual, as the Church never died. The donations of these allotments, for want, of a better method of perpetuating the transaction among the laity, who knew nothing of letters, had always been made by livery of seisin, done in the most solemn form, to impress it on the, mind, before a number of the co-vassals or tenants of the lord ; who-In case of a dispute, were assembled in the lord’s court, and determined chiefly by the remembrance which these impressions had made between the parties. ' The presumption was, (hat if some who were present, from length of time, had forgotten some of the circumstances or conditions annexed to the donation, others of them might remember them, ail'd so, by the united remembrance of all together, might, in the end, ascertain the true state of facts. This, by the way, Í suspect was'the origin of juries, and of the unanimity required in their decision.Each juror contributed the circumstances lodged in his mind to the general stock of information which formed the verdict; and by conference with his fellows, brought *225 to their recollection the circumstances which he remem-bemi, and the others, or some of them, had forgotten, un-tii at length the whole transaction was renovated in the minds of all. Tins mode of conveyance answered the purpose sufficiently, when donations wore for the life of an individual only; for it would seldom happen that he would survive all the other pom of the lord’» court, who were present at the investiture, Bur when donations were made for life to a churchman, for the benefit of Ms Church, and it was a received maxim thai the Chnr¡ h never died, this method no longer answered the put pose as to diem ; for the donation might have continuance, and the conditions upon which it was made, might come, in question, after every one of th? pares present at the investiture were no more, ami thou the allotment, might be liable to be resumed by the lord; all lands inclndcd in his territory or manor, not grunted to one of his \ uss.-C. belonging to him ; and, after the death of .df th<> paras, no evidence, remained of the investiture, much less of 'he conditions annexed thereto. I( became nece. sary, therefore, when the Church was concerned, to have some other mode of perpetuating the transaction than mere livtry of seisin; and the Clergy being tnc learned part of tie community, devised the mode of reducing the terms of tin* donation towrUing. Sullivan 82. And when the lord, or account of sickness, the distance of the land from his place of resin, nee, his being employed in some oitv-r business, or some other cause, could not go upon the land to make livery, then the writing containing the terms of the donation was solemnly delivered, before the peers of the court also, in lieu of the land; to the end that, being delivered before them M so solemn a form, they might be witnesses of the investiture of the land mentioned (herein, and might he able upon trial to ascertain the identify of the. paper delivered ¡mould the dispute happen i,n their time. This was not indeed, a complete, investiture. ,»f itself, it was termed the imp. oper investiture, and bound the lord to make a more formal livery of se -in of the land rotrained in t,be deed at a future d *y, «mi was a'sufficient security to the donee in the interim. Experience evinced the safety and certainty there was in reducing these landed contracts into writing in the case of church-pen, and the laity, wishing to be as secure as possible in their possessions, adopted by degrees tne same method ; which afterwards, when these allotments were ex *226 tended to the heirs <»f the possessor, became equally ne ce^sary for the íaitv as the Clergy, and from that time,, deeds of feoffment, to accompany the livery of «cisin, became generally used, though the livery of seisin, was good without them ; and these contracts in writing, being found so advantageous in perpetuating ‘lie terms and conditions of a landed donation, were, by degrees, converted to the purpose of perpetuating other contracts, that concerned only persona! estate, which formerly, amongst the unlettered Saxons, were completed by shaking of hands only, 2 Bl. Com. 448.
Ii. The preserving the remembrance of a landed contract. having thus become general in the times of the Saxon government in England, and the general illitera-íurc- of the laity of all ranks prevailing universally, it was customary for them to put some mark, usually the sign of the cross, to identify, as well as they could, the writing they liad agreed to ; and this was done coram paribus, who, upon the trial, might remember it, or be able c distinguish it from some circumstance attending the making the deed or the mark itself. But upon the Noun.vn conquest, it became the, policy of the conqueror and his sons m abolish the Saxon customs, and for this purpose to draw as many causes as possible, to be determined in the cuña regís, where the judges were Normans. Sulliv. 339. 343. 369, 374, where the pares of the neighborhood were, frequently not culled upon to decide between the litigants, as they uniformly were in the courts of Saxon institution, the county court, hundred court, &c. About this period the Bishop was separated from the Sheriffs!! his county court $ and it was established as a rule, ■that the county court had not cognizance of any demand of more than forty shillings value j the consequence of which must have been, that all causes were carried into cuna regis'; and it must frequently have happened also, that the marks affixed to the deeds, for want of the pares, were incapable of any distinction, and of course, any proof of the identity of the instrument. This produced an inconvenience. The greatest men among the laity could not write their names, so as to give a proof of identity that way, and being under the necessity of pro-yidmg som<- more certain criterion of identity, than that of th" 4 :;n of the cross, they introduced foe the first time Into England, the practice of impressing their writing . *227 with'a seal. Sulliv. 374. Terms de ley, verbo Fait.— Gilb. law of Evid. 17, 18, 20, 78. The seal exhibited the. emblem vvhieh its owner bad affixed to his pee-ein, when covered in the field with his mat of ma l ; and which be.ing puurtrayed upon some con-picuous part’ of his dress, served to designate his person- There symbols came to be very much in use at the tune, of the. crusades to the Holy Laud, in the time of Richard J. and after, and were continued by the knights and other persons, who theii used them by way of distinction in Cfieir families afte- their return home. The seal, therefore, of any'distinguisbed person, could immediately be know by inspection only. This method of sealing, however, was not introduced all at once, but by degrees, it was at first only used by such as were entitled to toosc dis. Anguishing symbols — by the, nobility and gentry only. For Lucie, Chief Justice of Henry II. reprimanded a common man, who had made use of a seal, saying, frit belonged to the nobility only. Terms de ley, ubi supra, and several other books. But it is to be remarked, that about tbiis period, and for some time before, the common people had but little use for seals, as they coukl liave but few contracts. The conquest had introduced the maxim of non alienation without the consent of the lord. A great number of them were villains, who could not acquire property at all but for their masters ; and as to the feudal tenants, they were continually harassed by attending their lords in war. Commerce liad not vet began to flourish and increase the personal property of the nation. The old Saw authors of-those times have scarceh a chapter upon personal property. 2 Bl. Com. 385. And even when the doctrine of non alienation began to wear away imperceptibly, the common people, being not entitled to. any family distinction, had no seals, and were obliged to contract as formerly was used before the introduction of -sealing. The uncertainty of such a method begat, in combination with other circumstances peculiar to those times, the practice of conveying by fine; where the whole transaction, with the precise terms of the conveyance, were recorded in one of the King’s courts, and obviated completely any future controversy respecting the execution of a deed. At length, however, the eyes of the na - tion began to be opened to their true interest $ trade flourished $ agriculture was encouraged; personal property *228 increased ; lands, or pari of them at least, began to be freely alienated ; they were made liable to answer the debts of the merchant, and as to part of them, the debts of any other proprietor. Contracts, both for real and personal property, berime frequent among all ranks of men. The necessity of authenticating their written contracts beramp urgent; they of course used the best mode then known. They broke through the privileges of the nobility and gentry, and made seals willi such impressions as each man’s fancy suggested to be the properest mark for distinguishing his contracts. By the time of jEdward III seals were in general and common use.— Terms de ley, ubi supra. Cunningham, Title deeds, who cites Perkins, 229, arid sequentia. And it became a rule of law that a deed could not be constituted without a seal ; and the method of signing with the sign of the cross, or some other mark, had gone into total disuse. Thus it seems clear, that the seal was originally introduced in the place of signing, as an evidence of the identity of the writing which contained the party’s agreement, and afforded a full proof (hereof by the inspection of its impression only ; and signing by the party was held unnecessary and useless. I» reality it could contribute, but little to the proof of the writing, as long as the illiterateness of the people, continued ; which was until sometime after the introduction of printing into England, in the time of Edward IV. insomuch that as fate as the time of Henry VII. the being able to read was held to be a legal proof of a man being a.Clergyman, or clerk in orders, 4 Bl. Com. 360.
This universal use of seals, however, produced its inconvenience, when every man who made a contract was obliged to use a seal to authenticate it. Many of those seals were not known to the jurors, and they could not determine in many instances, on the authenticity of the instrument upon the inspection of the seal only. They were under a necessity therefore, to call upon those who were supposed to know the seal which the party used, to say whether that was the impression of his sea! or not | and upon this evidence they decided, and sometimes upon the comparison of the seal with the impressions upon other instruments .'Inch were proved to be sealed by the party. But. still, in contemplation of law, these seals were held to contain an intrinsic evidence in themselves *229 of the contract to which they were affixed ; and therefore, as well as for the purpose of being compared, the role of law was, that they should be carried out !>y the jury.— Gilb. Law of Evid. 20. But with respet to those seals which still retained suíficñ nt distinction in themselves as the great seal, the seals of the courts of justice, the seals of corporations, and some others, no proof as to them was required or perhaps was allowed. Thev still continued to answer the genuine purposes of seals at their first introduction, and were full evidence of themselves. The people began at length, to forget the original use of this institution, and to seal with any impression they could get; and the law, rather than invalidase the whole transaction, left it to the jury to decide whether that was the seal of the party or not. In this country the people have departed still further from the true use of seals, by not making any impression at ail, scrabhing something like a seal upon the margin of the paper, and snaking that pass for e seal. To the first of t e.rw abuses the law has conformed, and will ¡sow deem the sealing to hr sufficient. if found by the jury to be she s»al of the parly. — . For fear of destroying some contracts improperly made at first, it lias relaxi d froto strict propriety, and the practice of .sealing with any impression has become genera]; and is now from necessity, allowed to he good to every instaure. Cunn, verbo Deeds, cites Perkins. 129, 34.—Cro. Car. 149. Gilb. Law of Evid. 20, but stiltohe contemplation of law is in co -fis-mity to the aneie»: use of seals. They are deemed the signs of authenticity, are supposed to have an intrinsic, evidence in themselves, and for that reason are catried out by the jury. Gilb. Law of Evid, 17, 20, cites Sid. 145, Hard. 118. Pluwd. Com. 411, and Sir Edward Coke, speaking of deeds, page 6 b, says, “also the deed may receive credit per collationem sigillorum, scriptures, &c.” and Baron Gilbert, in his note upon 2 Bac. Ab. 494, says, “Uve seal apjn aiing, it must be presumed to he put then- by tin' parties to the deed;' and cites Leo. 25, Owen, 23, and Rend. 1.
In the reign of Henry VII. and Henry VIII learning, and the art of writing, trad beruuv much loss general than in former times, and by this time aCo seals had be,-couie much less a mark of distinction, and peorf of the individual cons; act made by the p.níñ-s, than in former reigns : but the rule, that the deed Hmst.be authenticated *230 by the party's seal had passed into settled law. In order, therefore, to give a sure proof of the sea! which proved the writing that contained the agreement of the party. subscribing his name at the foot of the instrument, immediately after its conclusion and prefixed to the seal, in the same place and in the parfy’s own handwriting, began to be used. Noy. 163. And although it was held in conformity to the rule then established, and winch has ever sime continued, that such a signature, was not necessary to the essence of the deed ; yet where the jury could not decide with respect to the deed, upon inspection of the seal merely, nor be satisfied by a witness who lsnevv'the impression, nor by a comparison of the seal in dispute, with other seals made, use of by the same parly, ,the.y were allowed to form their judgment upon the handwriting of the party prefixed to the seal ; and that was the scriptures intended by Sir Edward Coke, in the passage above cited, where speaking of the doctrine of deeds and of presumption, tie says, “ also the deed may receive credit, per collaiinneni sigillorum, scriptures, Spc. el super Jidem cartarnm : mortuis testibns erif ad patrian, de necessitate, currendnm.” Co. Litt. 6 b. It may be bore supposed he meant the handwriting of the witnesses ; hut this is not his meaning, for he says expressly, in the very next page, that the clause of hii$ testibus is not essential to the deed ; and in page 6 a, he says, “very necessary it is,” by which he means advisable or prudent, “that witnesses should be underwritten or endorsed for the better strengthening of deeds,” ( not that it is absolutely necessary to make them valid) “and their names, if they can write, written with (heir own hands,” not that they must necessarily be subscribed with their own hands. Even at. this day, there were, many witnesses who could not write their own names, and their names were to be endorsed ; and when these witnesses, namely, witnesses who had not subscribed their names in their own handwriting, could not be found or were dead, then the deed was to reren e credit, per collationem sigillorum et scriptural, coupled together. This proves the position, that the signature of the party was used as a proof of the (If it was not evidence of tho seal, then it was in vain to’prove the handwriting at: all: for tij&t of itself was totally unessential to the deed, and made no part of its essence, as the same author had said in the page last *231 preceding, and ns is held to be law at this day. Salk. 462, pl. 2.) And, that, the 'proof of the signature of the party, when admitted, is «sed as a proof of ibe seal, is avowed in terms almost unequivocal, by Baron Gilbert, in his law of evidence, 99, 103. where he says, “for though the deed be produced under hand and seal, and the hand of. the party t ha! executes the deed be proved, yet this is not full proof of the deed, for the, delivetj is necessary to the essence.,” Does not. this inanife-tly imply,'that tint proof of the liiii'd writing praxes every thing, which is of the essence of the deed, but delivery only: and of course, that it proves the seal? With respect toan atiesten sealed instrument, it is the common .practice in the English cows, where the witnesses are not to be found, to prove both Hie h .nitWining of the witnesses awl of the party. Bl. Rep. 532. Forbes, executors. &c. v. Wale, such proof admitted before Lord Mansfield, to be given, 2 Brown's Ch. Rep. 336, 538. The same proof admitted before the Lord Chancellor, and stated by the counsel opposed to the fact, it meant to estublish, to be evidence in the common form. The sama proof must also have been admitted in the case of Gould e ui Jones, reported in Bl. Rep. 384, as may be seen by having course to the case itself; and the same kind of proof was clearly admitted in the case of Coghlan ami Williamson, reported in 1 Doug. 93 But why in all those cases is the proof of the patty’s signature held necessary, if proof of fi.e witnesses’ baud writing proves bo h sealing and delivery, and not the delivery <m!y ? From the. reason of the thing itself, and more especially from the great weight of these combined authorities, it seems to be e. conclusion fairly warranted, tirat at this day, whatever it might have been fintnerly, the seal is in some insianees proved by the signature of the p '.rty. This holds in all those instances where the signature of the party is admitted to beproied: and that the seal always since its first introduction has hem used a‘« an evidence of Hie writing, in which the party has de-po.<ned his agreement.
III. With respect to the delivery, I have t o more to add to what has been already said relative to its coining into use instead of tho livery of seisin, and being, like that, made in solemn form corara paribus, to the, end it might make the deeper impression m their minds, than that this solemn delivery of the deed coram varihys being *232 fiiund to be well calculated to make the desired impress-¡0.j id the ottsi* of landed contraéis ; and also, fro hi the same solemnity, to excite in the party a reflection upon the subject he was engaged in, it was continued in other contracts; and, like the seal, was considere'! an essential ingredient to tiie constitution of the deed. Here, it may not he improper to remark upon the excellence of this institution when once established, though introduced gradually and for oilier purposes, in preventing all manner of surprize upon the party. It, wgs first, to be written ; this necessarily employed some time; he had the in-tervai f*or reflection ; it was to be read over to him if he requested it s then the was was to be picpared and melted ; next a seal to be procured : then an impression to be made; thus gradually approaching to the final act. still giving time, for reflection, and exciting by each new act still greater apprehensions ; and lost, of all, lest the former precautions might, not be sufficient to put him upon reflection, he was called to go before the pares of the neighborhood, and make a solemn delivery of the instrument. After all these ceremonies were complied with, it was scarcely possible to believe, that the party was circumvented by fraud, or surprised into what ise had done. After tiie pates were disused, and tiie authority of the county and hundred cmir-s di ssinisned, I aonr-iend a delivery before the pares went out of use, b it that a delivery of tiie contract was still used as a sign of the party’s assent to the con tract contained in the-deed, and has ever since been deemed necessary to give it its final validity.
Such seems to he tiie origin and progress of the several circumstances of writing, sealing and delivery of deeds, which, came into use, not all at once, but at different periods of time ; and were used tor perpetuating, authenticating and proving the complete and final assent of the party to his con tract. Any other concomitant circumstances, besides those, though they have been sometimes used, and said ;o be incident to deeds, as signing by the party, subscription by witnesses, and many other, as may be seen m Co. Litt. 7, a, yet they have never at any period of time, been held material to the essence oi the deed ; unless- pi i haps in some instances, where such circumstances have .oeen required by statute: and that these are the only necessary circumstances is proved by all law writers both ancient and modern. Co. Lift. 7 a. *233 says, “I Lave termed the said parts of tlie deed formal or orderly parts, for that they be not of the essence of a deed of feoffment. For if surli n deed be without premises, habendum, tenendum, reddendum, the clause of warranty, the clause of m* cujus rei testimonium, the date and the clause of Mis testibus; yet the deed is good : for if a man by deed gives lands to another and his heirs, without more saying, this is good, if he put his seal, deliver it, and make livery accordingly.5’ Wood in his Institutes, adds “where, liver} of seisin is necessary,” importing as Lord Coke clearly did also, that if it were not a deed of feoffment, but a deed of some other kind, then putting the seal and delivering the writing, would make it a good deed. The same definition is given, and the same circumstances only mentioned as necessary, in 2 Rep. 4, 5 to Rep. 92. 3 Bac. Ab. 393. 2 Bac. Ab. 493, who cites 2 Roll’s Ab. 21. 1 Nels. Ab. 623. Terms de ley, verbo Fait. Co. Litt. 171, b. Gilb. Law Evid. 78. Shepperd’s Touchstone of common Assurances, and many others.
After the production of this concurrent testimony of so many authors, it seems scarcely necessary to say that the subscription of witnesses in tiieir own handwriting to a deed, was never held necessary to its constitution. The reasons already assigned for 1he first introduction of seals and their continuance for a long time afterwards, namely, the illiteraturc of the laity, proves also that Uie subscrip-lion of witnesses was not used during that long period, which commenced soon after the conquest and continued to the time of Henry VII. and Henry VIII. Even the Magna Charta of King John, given at Reaningmead in the year 1215, mentions the Archbishops, Bishops, Barons, &c. not particularly naming them $ and in (lie end is attested in this maimer, testibus supra dictis el multis aliis ; and lest any thing should be added or subtracted from the form of the writing, he thereto pul his seal.— Bl. Law Tracts, 35, 36. In 1216, the first charter of Henry III. is attested thus, testibus omnibus prenominatis, et multis aliis. 1 infer from (hi;., that in a matter of so much moment, they certainly used the best method of attestation then known or used, and as they did no¡ subscribe their names, it is an evidence that the subscription of witnesses in their own handwriting was then not prac-tised. The attestation of private deeds was in the same manner — --the pames of the witnesses were underwritten *234 or endorsed, and this was used only as a memorandum to show who of (he pares were present, to the end they mig ht be called upon and associated to the jury, upon the trial of the issue, when the deed was denied. Vide Co. Litt. 6, a and b, and sometimes it was said, teste comitatu, hundredo, &c. 2 Bl. Com. 307. I apprehend the practice of subscribing by the witnesses came into use at the same time with the subscribing by the party — .at a time when the law respecting deeds was already firmly established, and when both these circumstances were held unessential, though perhaps both of them at the time might be useful — the signature of the party to prove his seal and that of the witnesses, when they could not be found to prove the delivery of the deed. For when it was proven by his own signature to be the seal of the party, there arose a very strong presumption from the proof of the handwriting of the witness, that they had been present at the de-' ]hery. But this kind of proof was only resorted to when positive testimony could not be procured, and was notin the party’s power to produce. To proceed a little further, the statutes of 2 Edw. IL and 9 Edw. III. speaking of the trial upon the issue non est factum, say, “ the witnesses shall be summoned w’heie there are witnesses named in the. deed, but if they do not appear at the day appointed, the trial shall proceed notwithstanding their absence.” Hence the conclusion follows, that in those, days there were sonto deeds without witnesses named in the deed, and as to them, there was no delay of trial. Secondly, that there were other deeds wherein witnesses were named, and that as to them, the trial could not be in their absence, for they were to be summoned and make part of the jury. Thirdly, this statute directs that they shall he summoned as usual, but in case of their non appearance, the trial .shall nevertheless, go on by the jury that are present. Fourthly, that there was some other method then used of pinning a deed, than by the witnesses named in the deed, or else this statute operated injustice by ordering the trial to proceed upon the first default of the, witnesses (who perhaps might be convened at another day) and by so doing rendered the deed invalid and void ; and this it is unfair to presume. That it could be .proved by other means, is held by Lord Coke 121, b, where he assigns reasons why the law requires the pro-fert^of a deed in pleading to the court, tñ%. that it may *235 be proved by the witnesses, or other proof, if denied.— This opinion is strongly confirmed by some modern de-cisinns, where tlie rule of law is held to be, that a witness shall not be permitted to deny his nw ■ aitestation. The true meaning of which rule is, that if lie does deny it upon the fthe (bed may be proved by others who were not attesting witnesses, and whose names were neither subscribed nor endorsed. Bong. 9,16. 4 Burr. 2225.— This proves beyond all possibility of doubt, that the attestation of witnesses is not necessary : for if the delivery may be proved by persons who did not attest, in case of an attested deed, can there be any solid reason asign-ed why they may not prove the delivery in ease of an unattested deed, where there are no witnesses to deny their attestation, and by that means bring a suspicion on the' instrument ? Upon this point 1 think it may be affirmed in perfect consonance with the rules of law, that at this day the attestation of witnesses, either by endorsing or underwriting their names in the handwriting of the drawer of the deed, or by a subscription of their names in their own handwriting, is in no wise essential to the va-Jidify of the deed : and from all those premises we may also infer some other conclusions.
If writing, sealing and delivery, be the only essential parts of a deed, and the law deems it valid without the farther ceremony of a subscription by witnesses, then there must be some other competent means of proving the deed otherwise than by subscribing witnesses. It would be absurd to attribute validity to an instrument that had these essential parts, and yet say it should not be read to benefit the party producing it, unless proved by subscribing or endorsed witnesses. — But what other means are competent?
To form a decided opinion upon this head, we must remember, that there is but one general rule in relation to evidence, and that is, that the law requires the best evidence. But this rule is always relaxed upon two grounds, either from absolute necessity, or a necessity presumed from the common occurrences amongst mankind. The rule is not so stubborn, but that it will bend' to the necessities of mankind, and to circumstances not under their control. The rule is adopted only to obviate the fraud of mankind. One shall not deceive the .•jury by offering a less convincing testimony to establish *236 |)jg point, wiiori it appears there is a proof more eíuci-dative of the point in rontróversy in his own possession or power, which perhaps h¿' does not offer because it would be decisive against him. It was never meant to exclude the party from justice, merely because lie had not, through ignorance, provided himself originally w ith the best evidence it was possible- for him to provide: for then two witnesses would be better than one; a hundred better than two ; and so on progressively. A writing would be- better than a parol contract, a deed better than either, and a record better than all. Neither was if intended to deprive any one of justice, when, without any default in himself, he had lost the better evidence which he had provided originally. It first deprives him of the power of imposing upon us, and then lays itself open to be relaxed, as circumstances shall in justice require. These circumstances, as 1 began before to mention, are of two kinds; those founded on absolute necessity, and those founded on a necessity occasioned by those occurrences which are common amongst mankind. We will touch upon the- first class only. In the case- of deeds, if there be subscribing witnesses to them (see 1 Mkins 49, the argument of Lord Hardwicke, in the celebrated case Ormichund and Baker, arid mark the implication) they musí be proven by these witnesses. Because, it is presumed that these witnesses can give a more distinct and satisfactory, relation than any others, having been callet} upon originally for that purpose,* but if the witnesses be dead, or hot to be found, and that be"proved to the court, then the handwriting of the subscribing witness may be proved: that raising a violent presumption in favour of the deed. If tire deed be lost, and that appear to the court, then the copy shall be . read, as affording a presumption. But if there be no copy, then an abstract may be admitted, that affording a probable presumption ; and if no abstract, parol evidence of the contract, may bo offered. The true intent of the parties to be regulated by. that contract, shall not be defeated and justice overturned, so long as any evidence remains which throws any glimmering oflight on the subject, from which a jury may be enabled to infer the real stale of the transaction. The subscribing witnesses in the case above stated are not required, because the deed cannot be proved without them, as has been already evinced; but because were they not produced, the Defendant would he deprived of *237 *.be cross-examination of those persons ho had provided to give te';,ii!St»;i>3 *• r himself, as well as fur the othci party ; and who if prodree-í, opon such cross-examination, would perhaps gut*, material testimony for him. But if the subscribing witnesses are n«f to be had, the law chuses the least of two evils. It is better to dispense with the witnesses, and receive other ¡¡roof which may be sufficient, than adhere to the rule when they cannot be had. ami so, at any rate, destroy the deed ; thus, if the obligee removes the witness, his acknowledgment that lie executed the deed, is proof. H. BL Itep. ;623.— In ail cases, therefore, where it is apparent to the court, that there is no positive testimony to be had, there must be a recurrence ro tcatisimuy founded on presumptions, <y' circumstantial proof as it is called, *• Therein requiring first the best presumptive proof that is to be ¡>ad, and in default of tine, the next best, until welmv, p.-:si;d through all the several grades of circumstances that raise presumption, from that which Lord Coke te so-- the. violent, until we arrive at that which excites the light presumption that movHh not at a!!.
If this be the true theory of evidence, and if. an' mint-tested deed, being valid, may sonic wav or other be proved, as it certainly may ; then in the first ¡¡lace the party must produce witnesses who were present at the execution, though not endorsed nor subscribi d ; ns in the ca.sc where subscribing witnesses to au attested deed deny it, and if there are no such witnesses, then there must be a recurrence to ¡¡resumptive testimony. And here, as in the case of an attested- deed, when' the witnesses were not to be had. proof of the party’s signature would be admitted as a proof ofhis seal,* so in the case of an unattested deed, I can see no reason why the same species of proof should not be admitted, where no better is obtained. There also, Lord Coke’s doctrine, so often before cited, of comparison by scale, handwriting, &e, might be admitted. The law abo will here chose the least of two evils ; and if sufficient p*‘oof of the seal shall be offered, other circumstances shall be admitted to prove the delivery. Tilts is yet. necessary. But a small matter is suUtcN.-í to rpútblish it, when once (lie seal is prove'-1 to +;•« satisiVciion of the jury, as leaving the. deed behind inn» after it \ .*• sc. lid and read, held a good delivery. Cro. Elia. 7, Shippen’s case. So where an obligation was written in a book, and the party put his hand *238 an¿¡ sea] (0 (]ie jeaf which it was written; adjudged this was sufficient, though there was no evidence of a delivery. Gro. Eliz>.-613. Fox v. Wrighh and many other cases to the same effect, if no positive testimony can be given of a delivery, the party must be allowed to- prove such circumstances a& will induce'the jury to find a delivery. In these two cases last cited, it is surely more compaii-tible with justice, and the rule of evidence in similar cases, to admit, than at once to destroy the deed by rejecting such circumstances which the jury might deem sufficient to convince their minds, together with other circumstances they might themselves be acquainted with. Surely.there are a great variety of circumstances from which a delivery might, very properly he inferred. Suppose a deed of feoffment, produced, and the hand-writing of the party proved, and also possession according to the deed. Co. Litt. 6, n. Gilb. Law Evid. 100. Suppose part of the principal be paid upon a bond by the Defendant, or interest: or suppose the bond should be shewn to him, and he requested the party not. to bring suit upon it: suplióse the bond sufficiently described in a letter and acknowledged. 2 Nels. 762, pl. 45. 2 Eq. Ca. Ab. 413, pl. 9. Suppose upon the back of the bond' he enter an endorsement taking notice of it as his bond. Buller 254. C. K. B. 500. Suppose he state it in a-bill or answer in Chancery. Buller 236. Suppose he has made a parol confession of it. Doug. 92, 216, in which last case, the proof evidently would have been deemed sufficient, bad there been ho subscribing witness. Or, by like parity of reason, suppose any other possible circumstance from which a jury might justly and fairly infer a delivery, surely it oqgi.it to be received. Even the possession of the obligee, where, the other party could not shew the illegal commencement of that possession, might afford a presumption in favor of the deed.. But, as there is no case to warrant me in going so far, I will not yet say that that circumstance alone should, be left to the jury. But such circumstances, as are before mentioned, and all others of equal weight, I do think should be left to them, to infer a delivery from or not, according to the best of their judgment. Therefore in the case stated, I am of opinion, that the witness was properly admitted to prove the signature of the Defendant; and that the jury "v^ere at liberty to infer from thence, that the seal affixed *239 was the seal of the party; and as the admissibility of this evidence is the only doubt staled, as the jury have found a verdict in favor of the Plaintiff subject, to that doubt only, it must be intended there was some other circumstance given them in evidence sufficiently evincing the delivery : and therefore as to the first objection stated in this special case, there, ought to be judgment for the Plaintiff notwithstanding.
It seemed to be insisted on at the trial, that the clause “ In witness whereof, I have hereunto set my hand and seal,” might be received as xn evidence of the seal; and as .some case may hereafter occur, in which that clause may have only the wordy “ In witness whereof, I have hereunto set my hand:” when in fact there may be a seal affixed, I will remark upon this clause a little ; more especially, as it is set down in this special case, and the opinion of the court is expected upon it. I would observe then in the first place, that, ibis clause contains a part of the words of the deed, and the deed itself, or any part of it, cannot be read, until the sealing and delivery of it be first proved; and of consequence, this clause cannot be read to prove the sea! until after the r-eal has proved the clause itself: and then as to the purpose of its proving or disproving the seal, it is totally useless; and, that such a clause is not only unnecessary in itself, but that the words of it have, always been disregarded, is proved by such an abundance of authorities, that the bare citation of them will fully establish the position that the omission of this clause or the addition of it, or the words of it, can have no influence whatever upon the writing itself. Some of them are the following: Co. Lift. 7, a. Salk. 714. 2 Rep. 5, The deed is good, though this clause he omitted. 2 JYb/.s. G23, pi. 7, who cites Moor 3. It is not a conclusion of the deed : for that which is written after it, is as much part of the deed, as that whicli is written before. Also 2 Mels. 621, pi. 13, who cites 3 Jluhlvode 300. ‘*1» witness whereof, I have hereunto set inv hand the rt, ed is good, if there be.a seal, though the clause do not mention the. seal. Cunning. Met. verlo Deeds, cites Hctl/ij 75, end by the like reason, <f it mention hand and seal, still it can operate nothing. 2 Sir. 314, 815. L. Ray. 1541 F ? Üm mw! is not established by the words of the waiting. hut t converso; the words ''ontained in the writing are proved to be (he words of *240 papíy 5}y j,is Hea], A»!«K if t'>e words contained in tisis >alau.se were- allowed to prove any thing, the party to be benefited by the deed would have nothing to do hut to insert this eian.se, “ In witness whereof I have sealed and delivered,” and the evidence of the deed would he complete. Suppose in the present clause that Cue word seal batí not been in the danse, and yet the seal should appear, with the word seal Within it, in th‘ handwriting of the obligor, as was the fact here: would it not be a harsh determination to say it wasjmt his seal? Yet wc know such cases often, occur.
1. it may he objected, that if the words contained in this clause are not suffered to have any weight, then the holder of a promissory note might add a seal to'the name of the parly; and by that means avoid the act of limitations, and also, circumscribe thp party in point of evidence. To this, the answer is, that the rules of evidence were established long before t.he statute of limitations, and that ac! did not intend to alter them.
2. Thai the law has guarded against such attempt by making the writing totally void, if it should be attempted ; and also subjected tiie party to very severe punishment for the attempt.
3. If tlmre are witnesses, they may be produced to say what they know of the seal.
4. If there :;s*eno witnesses, the circumstances to prove a deliver/, may throw some light upon the seal itself.
5. Foe law will noi presume .-men turpitude in any man. The possibility ofhis c unmCting such <ui offence will riot vitiate toe act, as if he h id actually committed it; and in this case, as in all others, the injured parry should prove the injury done him. Again, if the instrument should bo hejd invalid, because possibly, the seal might have been affixed after the execution of it, then snore good deeds would he destroyed upon suspicion, than frauds prevented by it. For fea men will attempt a fraud of this kind, under the multiplied li ,zard of receiving infamous corporal punisiunru*, and being forever degraded from their rank in soes-t t ami the total loss of the thing secured by the. decoy '■specially if it be of great value. Experience' shows act men, not well knowing the technical distinction he!ween a seal and tneir signature, say, witness their hands, and put their seals aiso, and e converso, declare in this clause that they have put their hands and seals. *241 where they have subscribed their names only. Here, as in all other cases, the law chusos the least of two evils. Once more, the subscribing witness to a bond may have subscribed, being about to depart for a foreign country, when in fact, the deed may not have been- executed, but this possibility will not cause a rejection'of such testimony. nor shall the seal be rejected because not mention-, ed in the clause, for such possibility as is in the objection.
But it may happen in the case of an unattested bond, that there nsay not be sufficient evidence by circumstances to prove the delivery ; and this brings us to another question referred to the court in this special case, which although it is not necessary to be considered in order to the determination of the case, which is an action of debt, and depends entirely upon the question, whether this be the deed of the party or not ? Yet, as iv has been referred to the court, i suppose, for the purpose of ha\ tog the law settled upon this point also, 1 will make a few remarks on it.
The question is, whether an action on the case lies upon such an instrument, when it cannot be proved as a deed.
As to this, there is one rule certain, that no sealed instrument can be given in evidence to support an action on the case. Gilb. Law Evid. 100. Cro. Jac. 50, 508. The law has given a remedy of another sort upon those sealed instruments. An action on the case, depends upon parol evidence or. writing only. Therefore the action on the case must necessarily be destroyed, when the evidence to support it is destroyed by extinguishment; and all parol contracts and agreements are held to bo extinguished when they become clothed in a contract of greater solemnity, or evidenced by a sealed instrument; as these sealed instruments are themselves extinguished, so that no action can be supported upon diem between the same parties, when they have passed.in rem judicatam^ and have become matter of record. All this depends upon the rule of law already mentioned, that the best evidence shad be required. Thus, a bond shall not be evidence when there is a record of the same matter, nor pa-rol evidence when Hiere is a sealed instrument. This rule of law is not to be denied ; and then the whole question is reduced to this — whether when a seal appear, the party who produces the writing to which it tis affixed. *242 cl.all fce permitted to say it was not affixed to the writing originally? It has been for a tong time a standing rule of law, framed firs! indeed, for the protection of deeds, the only written instruments then in use, for unsealed insfronx'nts are but of modern date. 3 Term 330, but in policy extended to every written contract, that the least alteration in any material part, shall render the whole totally void ; and even, an immaterial alteration, made by the holder of. the instrument, shall make it void also, 11 Rep 27. A bill of exchange, payable <hree months from 'he 26th of November, was held to be totally void; it being found by the jury that the fop of the figure was blotted out. while in possession of the holder, so as to make it appear to be the 20th instead of the 26th, and by that means to accelerate the payment; though in fact no such acceleration of payment had been attempted. 3 Term Rep. 320. Now then to apply these rules to the case in hand, if the seal was not affixed to the instrument at the time of its execution, and ihe addition of the seal afterwaf ds he an immaterial alteration only; then the instrument being in possession of the holder or obligee, the presumption will be that it was added by him, and will turn it upon him to prove how it came there, like the case where the seal was torn off by a child — this raised a presumption of the deed being cancelled, and turned it upon the Plaintiff to show how the seal came to he torn from the writing. Cro. Eliz. 120. Palm. 403. Latch 226. In the. case of the hill of exchange, Lord Kenyon, speaking of the blot which made the alteration, said, if it had been done by accident, that should have been found to' excuse the party. He thought the, alteration having been made after the instrument came to the possession of the payee, raised so strong a presumption of his guilt, that in point of law1, the instrument should be deemed void, unless he could show the blot happened without his pri-vity : and so Í am induced to think in the present case, that if the addition can be considered as an immaterial addition only, yet to make men careful jo preserve their written instruments free from alteration or addition, it is good policy its law to suppose the alteration or addition made by the holder or obligee himself; therefore the moment he shows a sealed instrument, and says the seal was not originally affixed to the writing, the whole instrument must he deemed void, unless he can show that the *243 seal was affixed to it without any privity of his. But I take it, the addition of a seal is not an immaterial alteration only. It avoids the art of limitations' — it excludes the giving of parol testimony to explain or control the writing in any shape — it makes “he party liable, to another kind of action than that he at firs* stipulated — it deprives him of that latitude of evidence he might have had in the action on the ease ; and before, the act for the amendment of the law, would leave him, in the case of a single bill as this is, no method of discharging himself, but by a release or acquittance under seal. In every point of view therefore, the addition of the seal is a most material alteration; and if it be material, then no matter how it happened, or by whom the alteration was made, the whole instrument is totally void, and no action whatever can he supported upon it, no more than if the seal had been torn off t*> make way for proof of the writing as a simple contract. The law requires that the contract shall remain unaltered — that the party may not be subjected in any other shape or manner than that which he has consented to. Besides, if when the signature of the party is proved, that stands as presumptive evidence, of his seal; then an unattested instrument being produced, and the handwriting of tfie party proved, the presumption instantly arises and will stand for truth, until the party Plaintiff shall overturn it by evidence, accounting for the affixing of the seal, and that it was done without the knowledge of the Plaintiff, or any criminal intent in him — and so quacunque via data, the, seal appearing, it must be accounted for, to say the least, by the Plaintiff himself — and therefore, I am of opinion, upon the iast point reserved in this special case, that'debt is the proper action to be brought upon such an instrument as is therein stated ; and that the action on the case can, in no instance, nor in any possible case whatever, be, supported upon it — and this opinion receives credit from the argument of Justice Heath, in the case of Gibson & Johnston v. Minor & Foster, reported in H. Bl. Rep, 622, where, arguendo, he lays it down as clear law, that if the delivery of a bond cannot be proved, it cannot be, concluded that it may he given in evidence as a note should — because the creditor having taken his security in a determined form, he cannot at his pleasure alter it against the stipulation of the debtor$ and yet says he, the obligation includes a promise to pay money.
*244 Judge Mao ay was of opinion the instrument must be declare;] upon as a sealed instrument..
Judge Wixeiams was of opinion that the instrument could not be proved as a sealed instrument, for want of attestation ; and therefore ought to be declared upon as a writing only.
Judge Ashe seemed to dissent from the opinion of Judge Mac ay ; but concluded that there should be judgment for the Plaintiff.
Note-— The law of thir- case is now so well established, and it is so, common for an uusttested bond for the payment of money to be declared on as a sealed instrument, and proof of the oblig-or’s handwriting to be rdmitted, not only as evidence o( the seal, but also, coupled wi‘h the. Plaintiff’s possession, as evidence of the delivery, that wo are surprised it should over have oeen held otherwise. The case of Clements & Co. v. Eason & Wright, ante 18, and the division of the court upon the question in this case, show that a contrary opinion did once prevail. But, the very able exposition of the law upon the subject bv Judge Haywood, in this case, exposes at once the erroneous grounds upon which that opinion was formed, and establishes the true position beyond the reach of doubt or controversy.